THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION CINCINNATI

GREAT AMERICAN LIFE INSURANCE
COMPANY,

          Plaintiff,

    vs.

SECRETARY, DEPARTMENT OF THE
INTERIOR, ET AL.,

          Defendants.

Case No.1:16-CV-00699-MRB

Judge Michael R Barrett

## ORDER

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 10). Plaintiff, Great American Life Insurance Company ("Plaintiff" or "GALIC"), asserts nine claims against the Secretary of the Interior and multiple other Defendants on the basis that the United States government failed to honor a guaranty governed by the Indian Financing Act of 1974. Defendants ("Defendants" or "the government") contend that almost all of Plaintiff's claims must be dismissed due to failure to state a claim, lack of jurisdiction, sovereign immunity, or some combination thereof.

### I.    BACKGROUND

The Indian Loan Guaranty, Insurance, and Interest Subsidy Program (Program) was established under the Indian Financing Act of 1974 (IFA), Pub. L. No. 93-262, as amended, 25 U.S.C. § 1451 *et seq.*, and regulations at 25 C.F.R. pt. 103. Loan guaranties are governed by Title II of the IFA (codified at §§ 1481-1499), which authorizes the Secretary of the Interior to guarantee up to 90 percent of the unpaid principal and interest due on loans to Indian entities or

individuals "[i]n order to provide access to private money sources which otherwise would not be available." 25 U.S.C. § 1481.

In order for a loan to be guaranteed under the Program, that loan must close and fund. 25 C.F.R. § 103.18. Under § 103.36(d)(1), a guaranty holder may submit a claim for loss to the Department of the Interior ("Interior" or "Agency") if the loan borrower has defaulted. The Agency may deny a claim for loss if the loan is not guaranteed as indicated in § 103.18. 25 C.F.R. § 103.39(a).

On June 24, 2010, the Agency issued Loan Guaranty No. G103D1A1501. (Compl. ¶ 14). Plaintiff purchased the guaranteed loan on April 2, 2012. (*Id.* at ¶ 27). Plaintiff claims it was "induced" to purchase the loan. (*Id*. at PageID 3). On June 19, 2013, asserting default on the loan, Plaintiff submitted a claim to the Agency for loss under the guaranty. (*Id.* at ¶ 32). On December 23, 2013, the Agency denied Plaintiff's $20,043,618 claim for loss under the guaranty, for the purported reason that Plaintiff failed to demonstrate that the loan had been funded, as required by regulation. (*Id.* at ¶¶ 33, 47).

Plaintiff argues that, as a result, the Agency has "dump[ed] the burden of [a] failed tribal business on [Plaintiff]." (Doc. 15, PageID 126). According to Plaintiff, "the Government achieved this unjust result through a flawed administrative process triggered by GALIC's claim for payment under the Guaranty," in which the "[t]he Agency's final decision to renege on the Guaranty . . . was supported by . . . [the] alleged lack of 'sufficient documentation' that the original loan . . . ever funded." (*Id.*) Plaintiff asserts that, as a purchaser in due course in the secondary market, it had nothing to do with this original closing. (*Id.*) Regardless, Plaintiff alleges that the Agency's rationale for not honoring the guaranty is arbitrary and capricious because, *inter alia*, the Bureau of Indian Affairs monitored, almost hour by hour, the closing and funding of the original loan; reviewed and approved the loan structure; and accepted and cashed a premium check in the amount of

$405,354.00.  (Compl. ¶¶ 50-52).  This premium check is set by federal regulation at 2% of the original loan principal amount that the BIA guarantees.  25 C.F.R. § 103.8.  Also by regulation, the premium must be paid to the BIA by the original lender at the time the original loan closes and funds. 25 C.F.R. § 103.19 ("The premium is due within 30 calendar days of the loan closing.").

Plaintiff now seeks relief in this Court.  As Defendants, it names the Agency, its then-Secretary (Sally Jewel) in her official capacity, and two employees of the Agency (Lawrence Roberts and Jack Stevens) in their official capacities.  Plaintiff asserts the following claims for relief: (1) breach of contract; (2) "Violations of Due Process"; (3) "*de novo* review"; (4) "Arbitrary and Capricious Action": (5) fraudulent inducement; (6) intentional misrepresentation; (7) negligent misrepresentation; (8) declaratory judgment; and (9) "attorneys' fees."

## II. ANALYSIS

### a. Standard

The government argues for dismissal under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

#### i. Rule 12(b)(1)

Rule 12(b)(1) allows a defendant to move for dismissal on the basis that the court lacks subject matter jurisdiction.  When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists.  *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990); *Mich. S.R.R. v. Branch & St. Joseph Counties Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir. 2002).  A Rule 12(b)(1) facial challenge to subject matter jurisdiction questions the sufficiency of the pleadings.  In such cases, courts apply the Rule 12(b)(6) standard and the court must accept the alleged facts to be true and determine if those facts are sufficient to state a claim for relief that is plausible on its face. *Ohio Nat'l*

*Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"It is generally recognized . . . that Rule 12(b)(1) is the appropriate vehicle for a court's consideration of claims that are asserted to be . . . barred by sovereign immunity." *Living Care Alternatives of Utica, Inc. v. United States*, 312 F. Supp. 2d 929, 931 (S.D. Ohio 2004), *aff'd*, 411 F.3d 621 (6th Cir. 2005). "On a motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004).

### i. Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). However, legal conclusions conveyed as factual allegations do not have to be accepted as true; rather, the reviewing court is allowed to draw on its own judicial experience and common sense in determining whether or not the pleader can obtain any relief based on the purported facts. *Iqbal*, 556 U.S. at 663-64.

"[T]o survive a motion to dismiss a complaint must contain (1) enough facts to state a claim to relief that is plausible, (2) more than a formulaic recitation of a cause of action's elements, and (3) allegations that suggest a right to relief above a speculative level." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "probability requirement . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted).

### b. Claims

#### i. Breach of Contract (Count One)

The government argues that sovereign immunity bars most, but not all, of Plaintiff's contract claims: "Interior acknowledges that GALIC may pursue its claim for common law breach of contract (as stated in Count One) against the Secretary, but not the other three named defendants." (Doc. 10, PageID 59). Specifically, Defendants argue that 25 U.S.C. 1496(a) waives sovereign immunity for the Secretary, but not for the Interior itself or other Interior employees. The foregoing statute states in relevant part: "With respect to matters arising out of the guaranty or insurance program authorized by this title [25 USCS §§ 1481 et seq.], and notwithstanding the provisions of any other laws, the Secretary may-- (a) sue and be sued in his official capacity in any court of competent jurisdiction[.]" According to Defendants, the Interior itself and its non-Secretary employees should thus be dismissed.

Plaintiff counters, in reliance on *Am. Policyholders Ins. Co. v. Nyacol Prods.*, 989 F.2d 1256 (1st Cir. 1993), that "the distinction between a suit against the head of an agency and a suit against the agency itself is irrelevant." (Doc. 15, PageID 159). Plaintiff uses similar logic to support the inclusion of Defendants Roberts and Stevens in this suit: "Naming an individual in his official capacity is an alternative way of pleading a claim against the government entity to which the individual belongs." (*Id*. at 160).

Even if the Court fully accepts the logic of Plaintiff, the Court views the breach of contract claims pending against the Interior and its non-Secretary employees as wholly duplicative of the claim properly pending against the Secretary. In other words, and to mix metaphors: if the Secretary stands in the shoes of the Interior, and if naming its employees is the same as naming the Interior, then all roads lead to the Interior. So, there are three contract

5

claims pending against the Interior, premised on the same alleged breach. The Court does not allow redundant claims to stand in other contexts,[1] and declines to do so here. The breach of contract claims against the Interior, Roberts, and Stevens are thus dismissed. The claim against the Secretary will stand.

### ii. Due Process Claim (Count Two)

Defendants challenge Plaintiff's due process claim on multiple grounds. For simplicity's sake, the Court will not – because it need not – resolve all of them. Instead, the Court will assume *arguendo* that there are no bars to reaching the issue, such as jurisdictional defects or sovereign immunity. Still, the due process claim would fail because the government persuasively argues that GALIC fails to state a claim upon which relief can be granted. (Doc. 10, PageID 69).

In this case, Plaintiff's asserted property interest arises through a contract. (Compl. ¶¶ 69-70) ("GALIC had a property interest in the Loan Guaranty that is protected by the Fifth Amendment of the United States Constitution. Under the Fifth Amendment, GALIC cannot be deprived of its property interest in the Loan Guaranty without due process."). However, not all contracts with the federal government rise to the level of a constitutionally protected property interest. Regardless, the Court need not decide this issue. *Lujan v. G & G Fire Sprinklers*, 532 U.S. 189, 196, 121 S. Ct. 1446, 149 L. Ed. 2d 391 (2001) ("[W]e assume for purposes of

---

[1] *See, e.g., Wicker v. Lawless*, 278 F. Supp. 3d 989, 1003 (S.D. Ohio 2017) ("Plaintiff's claims against Defendant Mosley and Defendant James in their official capacities should be treated as suits against the county, and will be dismissed because they are redundant to the claim pending against Sheriff Lawless in his official capacity, which is also a claim against the county."); *Treinen v. Vill. of Greenhills*, No. 1:05-CV-448, 2006 U.S. Dist. LEXIS 44340, *22 (S.D. Ohio) (Weber, J.) ("[D]istrict courts have dismissed official capacity claims against individuals as redundant or unnecessary where identical claims are asserted against the entity employing the individual.") (collecting cases).

decision here that G&G has a property interest in its claim for payment [pursuant to the contract] . . . ."). Even if the Court assumes without deciding that the guaranty creates a constitutional property interest, Plaintiff is not entitled to any process against the Secretary beyond a post-deprivation lawsuit: "[A] claim that a government agency has violated a party's right to due process by refusing performance under a contract," as here, "is substantively indistinguishable from a breach of contract claim." *Suburban Mortg. Assocs. v. Dep't of Housing & Urban Develop.*, 480 F.3d 1116, 1127-28 (Fed. Cir. 2007). Due process property interests that derive from contract "can be fully protected by an ordinary breach-of-contract suit." *Lujan*, 532 U.S. at 196. Thus, the process to which plaintiff is due under these circumstances is a post-deprivation suit for breach of the contract.

Accepting all facts alleged in the Complaint as true, the Court cannot find a denial of due process, because Plaintiff's interests can be protected by a suit for breach of contract. Plaintiff's due process claim is thus dismissed.

### iii. APA Claims (Counts Three, Four)

Plaintiff also alleges that the government violated the Administrative Procedure Act ("APA"). Reading Counts Three and Four together, Plaintiff claims that it is entitled to *de novo* review of the Agency's decision. According to Plaintiff, the Agency did not engage in reasoned decision-making because, *inter alia*, it ignored dispositive evidence that the original loan closed and funded (thus entitling Plaintiff to the benefit of the guaranty). (Compl. ¶¶ 48-49). Again, to simplify the Court's analysis, the Court will assume without deciding that there are no jurisdictional or immunity bars to reaching this issue.

Review of federal administrative agencies' conduct is governed by the APA. *See Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 677 (6th Cir. 2007). The APA provides

7

that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, 767 F.3d 554, 559 (6th Cir. 2014) (quoting 5 U.S.C. § 702).

However, the right to judicial review is limited in significant ways. The agency activity for which review is sought must fit within the statutory definition of "agency action." 5 U.S.C. § 551(13). Unless a statute expressly provides for judicial review of a particular agency action, the subject action must also be "final," and one for which there is no adequate remedy in court. *Id.* § 704; *see also Bennett v. Spear*, 520 U.S. 154, 175, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997). Further, final agency action may be shielded from judicial review if it is one committed to "agency discretion." 5 U.S.C. § 701(a)(2). These limitations serve "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 66, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004).

The government persuasively argues that the APA claims must be dismissed because Plaintiff has an adequate remedy via its breach of contract claim. Specifically, the government argues that, even if the Court were to assume without deciding that that the Agency engaged in final, non-discretionary agency action, Plaintiff's "APA claim is doomed by the principle that relief under the APA is only available if the plaintiff has no adequate remedy at law." *Quicken Loans, Inc. v. United States*, 152 F. Supp. 3d 938, 949 (E.D. Mich. 2015) (citing 5 U.S.C. § 704; *Bennett*, 520 U.S. at 175). In order "for a cause of action to provide an adequate remedy in the § 704 context, a court need only be able to provide relief of the same genre to the party seeking

8

redress, but not necessarily relief identical to relief under the APA." *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012).

Here, the APA claim is subject to dismissal because the breach of contract action provides an adequate remedy. Plaintiff's reliance on *Jackson Square,* 869 F. Supp. 133, 140 (W.D.N.Y. 1994) and *De La Mota v. U. S. Dep't of Educ.*, No. 02 Civ. 4276 (LAP), 2003 U.S. Dist. LEXIS 13917 (S.D.N.Y. Aug. 12, 2003) is misplaced for the reasons stated in the government's reply. (Doc. 17, PageID 176-77). Additionally, the Court is not persuaded by Plaintiff's argument that it should be allowed to pursue relief under the APA as its alternative claim, just in case its breach of contract claim fails. While it may be true that Plaintiff views the APA claim as an alternative theory of relief, this view does not immunize the APA claim from a proper challenge under Rule 12. Regardless, the Court is not persuaded that that the APA claim will protect Plaintiff if the contract claim fails. Specifically, Plaintiff argues that it might fail in proving its contract claim but succeed in "showing the impropriety of the Secretary's interpretation of statutes and regulations." (Doc. 15, PageID 141). The government persuasively argues that the regulations are incorporated into the guaranty; so, if the Secretary did not breach the guaranty, then there can be no finding that the Secretary ran afoul of the regulations in a way that prejudiced Plaintiff. Thus, a breach of contract suit provides an adequate remedy. Plaintiff's APA claims are thus dismissed.

### iv. Tort Claims (Counts Five, Six, Seven)

Plaintiff pleads three counts (five through seven) based solely upon Ohio tort law. Defendants challenge the tort claims on multiple grounds, including but not limited to lack of jurisdiction and immunity. Again, to simplify the Court's analysis, the Court will assume without deciding that there are no jurisdictional or immunity bars to Plaintiff's tort claims.

Defendants argue, *inter alia*, that Plaintiff's tort claims require dismissal because such claims must be brought under the FTCA, which Plaintiff failed to do. "The [Federal Tort Claims Act (FTCA), 28 U.S.C. Part VI, Chapter 171 and 28 U.S.C. § 1346(b)] is the exclusive remedy for actions sounding in tort, and this is expressly so despite the statutory authority of any federal agency 'to sue and be sued.'" *Peak v. Small Bus. Admin.*, 660 F.2d 375, 377 (8th Cir. 1981) (citations omitted); *see also Tucker v. United States*, 8 F. App'x. 818, 822-23 (9th Cir. 2001). The FTCA requires that the tort claim first be presented to the appropriate agency:

> "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency."

28 U.S.C. § 2675(a); *see also Livera v. First Nat'l State Bank*, 879 F.2d 1186, 1194 (3d Cir. 1989).

Plaintiff concedes that the FTCA preempts claims against a governmental agency acting as an "instrumentality or agency" of the United States; however, it argues that when an agency is not acting as an instrumentality but instead operates primarily as a "commercial business entity," the terms of the FTCA do not apply. (Doc. 15, PageID 143-44) (citing 28 U.S.C. § 2671). In response, Defendants argue that Plaintiff offers no case supporting that the Interior has ever been excluded from FTCA protection on such grounds, and this Court should not be the first to do so. Defendants also argue that the non-Interior cases Plaintiff cites are distinguishable, as the governmental entities excluded from FTCA protection in those cases were entities like federal reserve banks that operated akin to private businesses, *i.e.*, their structures were like "private corporations," they enjoyed the "freedom and elasticity" of private businesses, etc. (Doc. 17, PageID 179). The government persuasively argues that "Interior shares none of those characteristics—and GALIC cites no authority for such a proposition." (*Id*. at 180). The Court agrees, and would further note that the Complaint is

10

devoid of allegations suggesting that the Interior operates like a private business. Accordingly, Plaintiff's tort claims are dismissed.

### III.     Declaratory Judgment (Count Eight)

Plaintiff bases Count Eight on 28 U.S.C. § 2201 (the Declaratory Judgment Act (DJA)) and Fed. R. Civ. P. 57. The "[DJA] does not create an independent basis for federal subject matter jurisdiction. The Act only provides courts with discretion to fashion a remedy. Thus, before invoking the Act, the court must have jurisdiction already." *Heydon v. MediaOne of Se. Mich., Inc.,* 327 F.3d 466, 470 (6th Cir. 2003) (citations omitted).

Defendants contend that the purpose of the DJA is to provide an additional remedy once jurisdiction is found to exist on another ground. (Doc. 10, PageID 67) (citing *Benson v. State Bd. of Parole and Prob.*, 384 F.2d 238, 239 (9th Cir. 1967); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). According to Defendants, a court may exercise its discretion to decline to consider an action under the DJA, particularly in cases when another remedy will achieve the same result. (*Id.*) (citing *Greenleaf*, 2013 WL 4782017, at *6.; *City of Highland Park v. Train,* 519 F.2d 681, 693 (7th Cir. 1975)). Plaintiff counters that such an interpretation defies the plain language of the DJA, which states in relevant part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought.*" (emphasis added).

Here, the contract claim provides the necessary independent basis for jurisdiction. Plaintiff also seeks a declaration that the "Agency is required under the Loan Guaranty to reimburse GALIC for its loss" (Compl. ¶ 90). While it is true that the foregoing declaration arguably provides the same remedy as a judgment for $20 million available via the contract claim, the Court sees no reason for

dismissing the DJA claim. None of the authority Defendants supply in support of dismissal is binding. Absent binding authority, the Court is disinclined to dismiss the DJA claim, particularly where the plain language of the statute contemplates that declaratory judgment may be entered with or without additional relief. The DJA claim will thus stand.

## IV. Attorneys' Fees (Count Nine)

Finally, the government challenges Plaintiff's request for "attorneys' fees," which Plaintiff asserted as a standalone cause of action and in its prayer for relief. To support dismissal, the government argues that a claim for attorneys' fees against the United States must demonstrate an "unequivocal waiver" of sovereign immunity expressed in statutory text. (Doc. 10, PageID 68) (citing *Yancheng Baolong Biochemical Prods. Co., Ltd. v. United States*, 406 F.3d 1377, 1383 (Fed. Cir. 2005)). The government argues that Plaintiff failed to establish that the United States waived sovereign immunity for a claim of "common law attorney's fees." (Doc. 17, PageID 181).

The Motion to Dismiss is somewhat unclear whether the government is simply moving to dismiss Count Nine as a standalone cause of action for Plaintiff's purported failure to expressly plead waiver of sovereign immunity, or whether the government wishes to bar Plaintiff altogether from pursuing attorneys' fees. The government seemingly argues against such entitlement, but at the same time argues in reply that "our Motion did not suggest that GALIC could not potentially recover attorney's fees in this case – only that Count Nine should be dismissed as a matter of law." (Doc. 17, PageID 181). Given the government's representation, the Court will dismiss the request for attorneys' fees to the extent that it is styled as an independent cause of action, but Plaintiff's separate prayer for attorneys' fees will stand. However, the government should be aware of the following: any attempt to block a petition for

dismissing the DJA claim. None of the authority Defendants supply in support of dismissal is binding. Absent binding authority, the Court is disinclined to dismiss the DJA claim, particularly where the plain language of the statute contemplates that declaratory judgment may be entered with or without additional relief. The DJA claim will thus stand.

## IV. Attorneys' Fees (Count Nine)

Finally, the government challenges Plaintiff's request for "attorneys' fees," which Plaintiff asserted as a standalone cause of action and in its prayer for relief. To support dismissal, the government argues that a claim for attorneys' fees against the United States must demonstrate an "unequivocal waiver" of sovereign immunity expressed in statutory text. (Doc. 10, PageID 68) (citing *Yancheng Baolong Biochemical Prods. Co., Ltd. v. United States*, 406 F.3d 1377, 1383 (Fed. Cir. 2005)). The government argues that Plaintiff failed to establish that the United States waived sovereign immunity for a claim of "common law attorney's fees." (Doc. 17, PageID 181).

The Motion to Dismiss is somewhat unclear whether the government is simply moving to dismiss Count Nine as a standalone cause of action for Plaintiff's purported failure to expressly plead waiver of sovereign immunity, or whether the government wishes to bar Plaintiff altogether from pursuing attorneys' fees. The government seemingly argues against such entitlement, but at the same time argues in reply that "our Motion did not suggest that GALIC could not potentially recover attorney's fees in this case – only that Count Nine should be dismissed as a matter of law." (Doc. 17, PageID 181). Given the government's representation, the Court will dismiss the request for attorneys' fees to the extent that it is styled as an independent cause of action, but Plaintiff's separate prayer for attorneys' fees will stand. However, the government should be aware of the following: any attempt to block a petition for

attorneys' fees, on the basis that Plaintiff's standalone cause of action for attorneys' fees failed, will not be well received by this Court.

## V. CONCLUSION

Therefore, consistent with the above, Defendants' Motion to Dismiss (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**. The breach of contract (Count One) and Declaratory Judgment (Count Eight) claims may proceed against the Secretary only. All other counts, and other Defendants, are **DISMISSED**. The Parties are to confer and submit a revised case schedule to Chambers for approval, which schedule shall include proposed dates on which counsel can make themselves available for a status conference.

**IT IS SO ORDERED.**

                                                   s/*Michael R. Barrett*
                                                   MICHAEL R BARRETT
                                                   UNITED STATES DISTRICT JUDGE