UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> SECRETARY, UNITED STATES DEPARTMENT OF THE INTERIOR, <br><br> Defendant. | Case No. 1:16-cv-699 <br><br> Judge Michael R. Barrett <br><br> **OPINION & ORDER** |

This matter is before the Court on the motion for summary judgment filed by Plaintiff Great American Life Insurance Company ("GALIC"). (Doc. 28). The Secretary of the Interior ("Secretary") has responded in opposition, (Docs. 33 & 34), and GALIC has replied, (Doc. 36).[1] For the following reasons, the Court will deny the motion for summary judgment.

I. **BACKGROUND**

On June 24, 2010, the Department of the Interior ("Department")—through the Bureau of Indian Affairs ("BIA") and its Loan Guaranty, Insurance, and Interest Subsidy Program—issued a loan guaranty certificate to Lower Brule Community Development Enterprise, LLC ("LBCDE"). (Doc. 17, PageID 189-92). The guaranty certificate was

---

[1] Also pending before the Court is the Secretary's motion to strike GALIC's supplemental filing. (Doc. 38). But as GALIC notes in its response, the Court invited the parties to supplement the record during the January 29, 2020, settlement conference. Consequently, the Secretary's arguments are not well-taken and the motion to strike is **DENIED**.

issued in connection with a proposed loan agreement between LBCDE and LBC Western Holdings, LLC,[2] and reflected a principal loan amount of $22,519,638.00. (Doc. 28, PageID 253). Under the terms of the certificate, the Department would guarantee up to ninety percent of the loan, or $20,267,674.20, plus applicable interest. (*Id.*, PageID 254). GALIC alleges that it purchased the loan in April 2012 from LBCDE for $22,368,035.51 and notified the Department of its purchase shortly thereafter. (*Id.*). The Department acknowledged receipt of the transfer notice, stating that the "notice appear[ed] to be in order," and that GALIC was "now the lender" under the loan guaranty certificate. (*Id.*, PageID 350-51).

In April 2013, GALIC issued a notice to LBC Western Holdings of an event of default, citing the failure to make a scheduled payment under the loan on April 1, 2013. GALIC also provided notice to the Department. (*Id.*, PageID 255). On June 19, 2013, GALIC informed LBC Western Holdings that it would be accelerating the loan, citing the failure to make scheduled payments on May 1 and June 1. (*Id.*). GALIC advised the Department of the acceleration in a separate letter, stating that it was invoking its right to submit a "claim for loss" under the loan guaranty certificate. (*Id.*). GALIC's claim was $20,043,618.67, representing ninety percent of the purported outstanding loan principal balance, plus accrued interest. (*Id.*).

In December 2013, the Department advised GALIC that it was rejecting the claim for loss after concluding that GALIC "failed to maintain and produce documentation that the guaranty was in effect under 25 C.F.R. § 103.18(a)." (Doc. 10, PageID 78).

---

[2] LBC Western Holdings is a subsidiary of the Lower Brule Corporation, which is a federally chartered tribal corporation formed in 2007 and wholly owned by the Lower Brule Sioux Tribe of the Lower Brule Reservation, South Dakota. (Doc. 28, PageID 253).

2

Specifically, the Department concluded that GALIC "failed to provide sufficient documentation to show that: (1) the Loan was ever made; (2) the Loan was ever funded; or (3) the funding, if it occurred, was spent in accordance with the conditions of the guaranty." (*Id.*). GALIC filed an administrative appeal with the Interior Board of Indian Appeals ("IBIA"), which affirmed the Department's decision on the ground that GALIC had not provided sufficient documentation to show that the loan ever funded. (*Id.*, PageID 106).

GALIC sued the Department, the Secretary, and two Department employees in 2016, bringing nine claims for relief. In 2019, the Court dismissed the bulk of GALIC's claims, leaving in place only its breach of contract and declaratory judgment claims against the Secretary. (Doc. 20, PageID 211). GALIC subsequently moved for summary judgment, contending that "[a]s a matter of law, the issuance of the Loan Certificate Guaranty is dispositive and precludes the Secretary from denying GALIC's claim for enforcement of the Guaranty now." (Doc. 28, PageID 257). The Secretary, while acknowledging the existence of the guaranty itself, argues that GALIC has never provided evidence that loan actually funded, and therefore misinterprets key statutory and regulatory provisions. Ultimately, the Secretary maintains "[t]here is nothing in the plain language of any statute that suggests Congress intended that the mere issuance of a Guaranty creates an absolute right to pay." (Doc. 33, PageID 422).

## II.  STANDARDS OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

(noting that a fact is "material" only when its resolution affects the outcome of an action, and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact, the nonmoving party may not rest on the mere allegations in the pleadings, but must instead put forth specific facts showing that there is a genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Relevant here, the BIA loan guaranty program is authorized by the Indian Financing Act ("IFA") of 1974, Pub. L. No. 93-262, 25 U.S.C. §§ 1451, *et seq.* "The purpose of the Program is to encourage eligible borrowers to develop viable Indian businesses through conventional lender financing. The direct function of the Program is to help lenders reduce excessive risks on loans they make. That function in turn helps borrowers secure conventional financing that might otherwise be unavailable." 25 C.F.R. § 103.2. Specifically, the guaranty and insurance provisions allow the Secretary to "guarantee up to 90 per cent of the unpaid principal and interest due on any loan made to approved organizations of Indians and individual Indians." *United Nat'l Bank v. United States Dep't of the Interior*, 54 F.Supp.2d 1309, 1311 (S.D. Fla. 1998). In the event of a default, reimbursement by the Department is not automatic; lenders must also comply with the statutory framework and regulatory requirements of the IFA. *See* 25 C.F.R. §§ 103.30-103.43.

### III. ANALYSIS

In its motion for summary judgment, GALIC essentially contends that the existence and validity of the guaranty certificate entitles it to payment because the Secretary is barred from asserting any of the defenses otherwise allowed by statute and regulation. (*See, e.g.*, Doc. 36, PageID 9071). The Court does not agree. First, GALIC engages in a flawed exercise of statutory interpretation when it argues that 25 U.S.C. § 1494 prohibits the Secretary from asserting defenses against subsequent loan purchasers. That section provides:

> Any evidence of guaranty or insurance issued by the Secretary shall be conclusive evidence of the eligibility of the loan for guaranty or insurance under the provisions of this chapter and the amount of such guaranty or insurance: *Provided*, That nothing in this section shall preclude the Secretary from establishing, as against the original lender, defenses based on fraud or material misrepresentation or bar him from establishing, by regulations in force at the date of such issuance or disbursement, whichever is the earlier, partial defenses to the amount payable on the guaranty or insurance.

25 U.S.C. § 1494.

Contrary to GALIC's reading, the term "as against the original lender" does not mean "only against the original lender." *See, e.g.*, *as*, MERRIAM-WEBSTER, merriam-webster.com/dictionary/as (last visited Mar. 26, 2024) (defining "as," in the form of an adverb, as meaning "to the same degree or amount," and in the form of a preposition, as meaning "like"). Rather, Congress plainly intended to provide that § 1494 should neither (1) preclude the Secretary from establishing defenses *against a transferee lender in the same way as it can against an original lender*; nor (2) bar the Secretary from establishing defenses rooted in the applicable regulations. *See United Nat'l Bank*, 54 F.Supp.2d at

5

1312 ("The plan language in § 1494 is clear that Congress intended to authorize the Secretary to establish regulations that would include defenses to payment on a guaranty."); *cf.* 25 C.F.R. § 103.29(a) (noting that a transferee, upon transfer, "will from that point forward be considered the lender for purposes of the Program"). To adopt GALIC's reading would be to completely strip the Secretary's ability to assert any such defenses against transferee lenders and, consequently, run afoul of "the idea that Congress presumably does not enact useless laws." *In re Davis*, 960 F.3d 346, 354 (6th Cir. 2020) (cleaned up).

In a similar vein, GALIC fails to to separate the disjunctive clauses contained in the second part of § 1494. Even if "as against the original lender" meant "only against the original lender," the phrase does not modify the remainder of the entire sentence. Rather, the disjunctive clauses are to be taken separately, meaning that nothing in the section should be read to "bar [the Secretary] from establishing, by regulations in force at the date of such issuance or disbursement, whichever is the earlier, partial defenses to the amount payable on the guaranty or insurance." 25 U.S.C. § 1494. And although GALIC correctly notes that the title of § 1494 makes specific reference to the original lender, "'headings and titles are not meant to take the place of the detailed provisions of the text,' and they 'cannot limit the plain meaning of the text.'" *Trs. Of Sheet Metal Workers Loc. 7 Zone 1 Pension Fund v. Pro. Servs.*, 65 F.4th 841, 848 (6th Cir. 2023) (quoting *Bhd. Of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947)).

To the extent that GALIC asserts it is also protected by "the settled commercial law holder-in-due[-]course rule," (Doc. 28, PageID 253), the Court notes that Article 3 of the Uniform Commercial Code applies to negotiable instruments, and "[c]ontracts of

guaranty are not negotiable instruments because a guaranty is, by its very nature, a conditional promise to pay and not an agreement to pay a fixed amount." 38 Am. Jur. 2d *Guaranty* § 11 (2024). Even if GALIC could be considered a holder in due course, "[t]he rationale [of that provision] is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment." U.C.C. § 3-106, cmt.1; *see* David Frisch, 5A *Lawrence's Anderson on the Uniform Commercial Code* § 3-106:7 [Rev.] (3d ed, 2018 Update) ("With certain limited exceptions, a promise or order is deemed to be conditional, therefore making the instrument not negotiable, when the instrument requires reference to another writing to determine the rights of the parties."). Here, the second full sentence of the loan guaranty certificate states that it "is subject to the provisions of" other writings, including applicable sections of the United States Code and Code of Federal Regulations. (Doc. 17, PageID 189).

The Court acknowledges that a valid loan guaranty certificate from BIA is indeed "conclusive evidence of the eligibility of the loan for guaranty." 25 U.S.C. § 1494. But a straightforward and logical reading of the applicable statutes and regulations also makes clear that eligibility of a loan for guaranty does not, on its own, lead to reimbursement in the event of a default. If it did, the standard of care for lenders would be a mere suggestion, instead of the requirement that it is. When GALIC completed its purchase of the loan, it became the lender from that point forward, *see* 25 C.F.R. § 103.29(a), meaning that it assumed a responsibility to "service the guaranteed loan and otherwise perform all of the duties required of the lender under the Program and the loan guaranty certificate," 25 C.F.R. § 103.29; *see, e.g.*, 25 C.F.R. §§ 103.30, 103.32, and 103.37. It is therefore

7

only natural that, prior to payment, the BIA would seek additional information to ensure that GALIC acted within the statutory and regulatory bounds of the IFA. And because the parties contest material facts related to the funding of the loan and whether GALIC complied with each of its obligations, summary judgment is simply not appropriate in this instance.

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

                                               */s/ Michael R. Barrett*
                                              Michael R. Barrett
                                              United States District Judge